Kenneth McCLARTY, Appellant,

v.

SECRETARY OF the INTERIOR et al., Appellees.

No. 21227.

United States Court of Appeals Ninth Circuit.

Feb. 20, 1969.

Donald H. Bond (argued), of Halverson, Applegate, McDonald & Weeks, Yakima, Wash., for appellant.

Roger P. Marquis (argued), George R. Hyde, Edwin L. Weisl, Jr., Asst. Atty. Gen., Washington, D. C., Smithmoore P. Myers, U. S. Atty., Yakima, Wash., for appellee.

Before CHAMBERS and JERTBERG, Circuit Judges, and THOMPSON, * District Judge.

THOMPSON, District Judge:

This is an appeal from a summary judgment entered May 27, 1966, by the District Court of the United States for the Eastern District of Washington, dismissing an action to review the decision of the Secretary of the Interior, United States v. McClarty, 71 I.D. 331 (1964), invalidating Appellant's mining claim located for building stone.

There have been significant developments in this area of the law since the processing of this case through the administrative appeals in the Interior Department and since the decision of the District Court. The Supreme Court has ruled (United States v. Coleman, 1968, 390 U.S. 599, 88 S.Ct. 1327, 20 L.Ed.2d 170)[1] that the Act of July 23, 1955, 69 Stat. 367, 30 U.S.C. §§ 601–615, eliminating as minerals locatable under the mining laws a "deposit of common varieties of sand, stone, gravel, pumice, pumicite or cinders" applies to common varieties of building stone, but that the Act of August 4, 1892, 27 Stat. 348, 30 U.S.C. § 161, authorizing mining locations of lands chiefly valuable for building stone remains viable and "effective as to building stone that has 'some property giving

it distinct and special value'." United States v. Coleman, supra, at 605, 88 S.Ct. at 1331.

And on April 30, 1968, the Secretary of the Interior, in United States v. U. S. Minerals Development Corporation, 75 I.D. 127, undertook to review and reconcile his many decisions with respect to building stone claims against the cogent charge that his rulings avoiding such claims had the effect of vitiating 30 U.S.C. § 161 with the result that no building stone deposits are locatable under the mining laws. Among the decisions discussed was that in the instant case (United States v. McClarty, 71 I.D. 331). In the U.S. Minerals Development Corporation case, the Secretary, impelled by the Coleman decision to breathe some life into the building stone statute, has defined guidelines for distinguishing between common varieties and uncommon varieties of building stone. These guidelines, as we discern them, are (1) there must be a comparison of the mineral deposit in question with other deposits of such minerals generally; (2) the mineral deposit in question must have a unique property; (3) the unique property must give the deposit a distinct and special value; (4) if the special value is for uses to which ordinary varieties of the mineral are put, the deposit must have some distinct and special value for such use; and (5) the distinct and special value must be reflected by the higher price which the material commands in the market place. We accept this analysis as representing a genuine effort by the Secretary to implement the admonition of the Coleman case that certain kinds of building stone are still subject to location under the mining laws. The result in the Minerals Development Corporation case was a remand for further hearing to develop further evidence regarding the price commanded by the stone there in question as compared to other building stone on the market. The

---

* BRUCE R. THOMPSON, United States District Judge, Reno, Nevada, sitting by designation.

1. The argument of this case in the Court of Appeals was delayed pending action by the Supreme Court on the appeal of the Coleman case.

evidentiary record was deficient on this issue.

■ In the instant case, McClarty located a mining claim on a deposit of stone which was naturally fractured in regular shapes ready for use by the stonemason, with little, if any, cutting or shaping required. The deposit was unique in that seventy per cent or more of the stone had been shaped by nature into forms immediately useable in commercial and residential construction. This was determined by a comparison of this particular deposit with other deposits generally. The deposit had a unique and special property or characteristic for use as building stone, and it was used by the locator for that purpose in commercial and residential construction. It should be noted that the common varieties statute (30 U.S.C. § 611) refers to a "deposit" which has "some property giving it distinct and special value" and not to the fabricated or marketed product of the deposit. Unquestionably, the evidence in the record requires a finding that this deposit of naturally fractured and regularly shaped stone was unique.

Thus, the only requirement elucidated in the *Minerals Development Corporation* case which remains to be considered is that of value. As to this requirement, the record is sketchy. If final decision must be predicated upon the present record, the claim of the locator should be sustained. The only evidence in the record is testimony that this building stone commanded $40 to $45 per ton on the market as compared with $6 to $7 per ton for common rock, and the testimony of a stonemason who had laid this and other building stone that the stone from this claim was easier to lay and required less time because of its shape and he hadn't seen any other stone as economical for laying as this. This testimony is undisputed and is the only testimony bearing on value; that is, value in terms of money. It, nevertheless, is evident that the hearing before the trial examiner did not focus on money value. The evidence of both the contestant and

contestee aimed at the unique properties of the deposit, contestant asserting it to be an unlocatable common variety of building stone with which the contestee took issue. Accordingly, in this case, as in the *Minerals Development Corporation* case, the Department may conclude with propriety that the case should be remanded to the Hearing Examiner for further evidence on the issue of money value.

■ In the *Minerals Development Corporation* case, the claimed unique properties of the stone (color and cleavability) were thought to be characteristics that should be reflected in the price commanded for the stone on the market if these properties truly gave the stone a distinct and special value. In whatever way one may view that conclusion in that particular case, in the *McClarty* case, where the unique properties of the stone are the natural fracturing into regular shapes and forms suitable for laying without further fabrication, the distinct and special economic value of the stone may or may not be measurable by the retail market price in comparison with the price of other building stones. It is quite possible that the special economic value of the stone would be reflected by reduced costs or overhead so that the profit to the producer would be substantially more while the retail market price would remain competitive with other building stone. All we are attempting to indicate is that the guideline "the only practical factor for determining whether one deposit of material has a special and distinct value because of some property is to ascertain the price at which it is sold in comparison with the price for which the material in other deposits without such property is sold" (United States v. U. S. Minerals Development Corporation, 75 I.D. at 135) cannot be the exclusive way of proving that a deposit has a distinct and special economic value attributable to the unique property of the deposit.

The summary judgment entered by the District Court is reversed and this case is remanded to the District Court with

instructions to enter a judgment remanding the case to the Secretary of the Interior with the suggestion that he vacate the decision of the former Secretary dated August 27, 1964, (United States v. Kenneth McClarty, 71 I.D. 331) and that the Department of the Interior have further proceedings not inconsistent with this opinion.